SMITH, Circuit Judge.
Thomas Moran, a St. Louis city police officer, sued various police department officials in their individual and official capacities alleging they violated his federal substantive due process rights and maliciously prosecuted him under state law. After a storied, lengthy, and racially-charged history, this case ended with the jury finding in favor of the defendants. Moran appeals, arguing the district court[1] erred in denying his motion for a new trial because of error during voir dire. Specifically, Moran contends that his challenges for cause and peremptory challenges against all of the black members of the venire should have been granted. We disagree and affirm the district court’s denial of Moran’s motion for a new trial.
I. Background
This case arises from the aftermath of the notorious 1997 beating of Gregory Bell, a mentally-impaired black teenager, by St. Louis police officers. The incident catalyzed racial tensions in the community. Moran’s lawsuit alleged that city officials, several of whom are black, made him a scapegoat for Bell’s beating because he is white. Moran contended no evidence linked him to the beating. The factual and procedural history of this case is well-documented. Moran v. Clarke, 296 F.3d 638 (8th Cir.2002); Moran v. Clarke, 309 F.3d 516 (8th Cir.2002); Moran v. Clarke; 213 F.Supp.2d 1067 (2002), Moran v. Clarke, 359 F.3d 1058 (2004); Moran v. Clarke, 323 F.Supp.2d 974 (2004).
In the most recent district court proceeding, the matter went to trial. During voir dire, Moran moved to strike for cause two of the four black members of the venire, Juror Norman-Cook and Juror Greene. In response to questioning, both jurors expressed strong feelings about the Bell incident. However, both Norman-Cook and Greene also indicated that they could be fair and impartial, despite the fact that doing so would be difficult. The district court denied the challenges for cause.
Moran then attempted to strike all four black members of the venire with peremptory challenges. In response, the defendants challenged the proposed strikes under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Moran’s counsel proffered race-neutral explanations for the proposed strikes. First, Moran stated that Norman-Cook, an intensive care unit (ICU) nurse, said that images of Bell’s beating gave her flashbacks to other seriously injured persons she has treated *650 over the years as an ICU nurse. Moran noted that Norman-Cook had a mentally-challenged nephew. Norman-Cook stated several times that she had very strong feelings about the case, but she also stated that she could base her judgment of the case on the facts presented in court despite those feelings. Moran’s peremptory challenge was granted with respect to Norman-Cook.
Second, Moran’s race-neutral reasons for excluding Juror Greene were Greene’s recollection of emotion and anger surrounding the Bell incident and belief that he would have trouble being impartial. Third, Moran noted Juror Tate’s unemployment and that he appeared hostile and antagonistic[2] as race-neutral reasons for using a peremptory challenge. Fourth, Moran provided two race-neutral reasons for the peremptory challenge to Juror Jones: (1) Jones testified during voir dire that he had served on a federal jury recently but could not remember the judge’s name or the case outcome, and (2) Jones indicated in his voir dire questionnaire that he watched TV but testified that he did not remember hearing about the widely televised Bell incident. Notwithstanding the foregoing proffered race-neutral reasons for striking Jurors Greene, Tate, and Jones, the district court concluded that the reasons proffered were pretext. The district court rejected Moran’s race-neutral reasons without requiring defendants to state why the reasons proffered were pretext.
Following trial on the merits, the jury found in favor of the defendants. Moran then moved for a new trial, alleging error in the denial of his for-cause challenges and peremptory challenges. In its published order denying the motion, the district court reaffirmed its disbelief that the reasons for the peremptory challenges were race neutral. The court noted that “Mr. Greene was hardly the only member of the venire panel who recalled the Bell incident, yet he was the only venire person [Moran] chose to strike because of his memory.” 323 F.Supp.2d at 981. The court further observed that striking Greene because of his memory was difficult to reconcile with the attempt to strike Jones due to his lack of memory of the Bell incident. The court also stated that there was no support for Moran’s contention that Tate should be struck because of hostility or unemployment. Moran now appeals. We affirm.
II. Discussion
A. Challenges for Cause
Moran appeals the district court’s denial of his challenges for cause against Jurors Norman-Cook and Greene. We review denial of strikes for cause under an abuse of discretion standard. United States v. Amerson, 938 F.2d 116, 118 (8th Cir.1991). Appellants must clear a high hurdle to obtain reversal of a district court’s decision regarding the dismissal of a juror for cause. The courts presume that a prospective juror is impartial, and a party seeking to strike a venire member for cause must show that the prospective juror is unable to lay aside his or her impressions or opinions and render a verdict based on the evidence presented in court. United States v. Wright, 340 F.3d 724, 733 (8th Cir.2003). Essentially, to fail this standard, a juror must profess his inability to be impartial and resist any *651 attempt to rehabilitate his position. See id.
Both Norman-Cook and Greene expressed that their recollection of the Bell beating affected them emotionally. Both acknowledged difficulty being impartial, given their strong emotions. Nonetheless, both consistently stated that they could be impartial. The district court accepted the genuineness of the jurors assufances and denied Moran’s motion to strike these two jurors for cause. Given the district court’s superior position to gauge the jurors’ credibility, we cannot say that the district court abused its discretion.[3]
B. Peremptory Challenges
Moran also appeals the district court’s denial of his attempted peremptory challenges to all four black members of the venire. Specifically, the district court allowed one black juror, Norman-Cook, to be stricken by peremptory challenge but denied the dismissal of the other three, concluding the race-neutral reasons advanced by Moran to be pretextual and therefore prohibited by Batson, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, and its progeny.
In Batson, the Supreme Court set forth a three-step analysis for peremptory challenges under the Equal Protection Clause of the Fourteenth Amendment. “First, the opponent of the peremptory challenge must establish a prima facie showing that the challenge is discriminatory.” United States v. Wolk, 337 F.3d 997, 1007 (8th Cir.2003). Second, “[t]he proponent of the peremptory challenge must then articulate a race-neutral explanation for the challenge.” Id. Third, “[i]f a race-neutral explanation is offered, the challenger must show that the explanation is a pretext for discrimination.” Id. We review the denial of a peremptory challenge pursuant to Batson for clear error. United States v. Elliott, 89 F.3d 1360, 1365 (8th Cir.1996).
Moran directed all of his challenges — both for cause and peremptory— at the four black members of the venire. Thus, the defendants established a prima facie case under Batson, as the attempt to strike all black members of the venire and no one else raises an inference of a discriminatory purpose. Green v. Travis, 414 F.3d 288, 299 (2d Cir.2005) (holding that the prosecution’s attempt to use all of its for-cause and peremptory challenges to strike black and Hispanic jurors established a prima facie case of discrimination under Batson); Harris v. Kuhlmann, 346 F.3d 330, 346-47 (2d Cir.2003) (holding that it was “objectively unreasonable” for the state appellate court to hold that petitioner failed to make a prima facie case under Batson where all five prospective black jurors were eliminated by peremptory challenge). In Batson, the Supreme Court stated that “a ‘pattern’ of strikes against black jurors included in the particular venire might give rise to an inference *652 of discrimination.” Batson, 476 U.S. at 97, 106 S.Ct. 1712. This case involves a pattern of using challenges to strike all prospective black jurors from the venire. By finding that this pattern established a pri-ma facie case, we do not suggest that numbers alone create or negate a prima facie case under Batson. See Luckett v. Kemna, 203 F.3d 1052, 1054 (8th Cir.2000) (“Although the number of African-Americans struck is relevant to determining whether a defendant has made a prima facie case, that evidence alone is insufficient to negate or create such a case.”). In Luckett, the defendant’s Batson challenged rested primarily on the fact that “the prosecutor had used most of his peremptory challenges against potential African-American jurors.” Id. We held that numbers alone could not establish a prima facie case. Here, by contrast, Moran’s attempt to strike all of the black members of the venire and no one else constituted a pattern of using challenges that gave rise to an inference of discrimination.
Moran proffered race-neutral reasons for the peremptory challenges under the second step of Batson. The standard that a party defending a Batson challenge must meet is extremely low. Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (stating that the second step of Batson “does not demand an explanation that is persuasive, or even plausible”). Moran’s stated concerns about Juror Norman-Cook’s vivid recollections of Bell’s injuries and the flashbacks to her own experiences as an ICU nurse, as well as the fact that she had a mentally challenged nephew, were race neutral. By citing concerns over Juror Greene’s repeated expressions of emotion and anger over the Bell incident, Moran also provided a facially race-neutral reason for the exclusion of Greene. Also, Moran provided facially race-neutral reasons for striking Juror Tate by expressing concern over Tate’s unemployment and his allegedly antagonistic behavior during voir dire. Finally, Moran provided race-neutral reasons for striking Juror Jones by expressing concern over Jones’s inability to remember key facts about his recent jury service, as well as his lack of recollection of the widely publicized Bell incident despite claiming that watching television was a primary hobby.
This case turns on part three of the Batson analysis and presents this court with a difficult issue. In a typical case, once the party making the peremptory challenge states a race-neutral justification under the second part of Batson, the opposing party “may then attempt to prove the facially valid reason is mere pretext and that the real reason for the strike was discrimination.” United States v. Elliott, 89 F.3d 1360, 1365 (8th Cir.1996) (citing Elem, 514 U.S. at 767, 115 S.Ct. 1769); accord United States v. Jones, 245 F.3d 990, 993 (8th Cir.2001) (citing Williams v. Groose, 77 F.3d 259, 261 (8th Cir.1996)).This procedure is consistent with the key principle that “the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.” Elem, 514 U.S. at 768.
Yet, in an exceptional case, as here, this principle comes into tension with a more fundamental judicial principle: determinations of credibility, including those surrounding voir dire, are peculiarly within the province of the district court. See Elliott, 89 F.3d at 1365 (“On appeal, we are mindful of the fact that evaluation of the prosecutor’s state of mind based upon demeanor and credibility lies peculiarly within a trial judge’s province.” (citations and quotations omitted)).
*653 The district court departed from the script of the typical Batson play. The court did not turn to the challenger of the peremptory challenge to put forth evidence probative of pretext. The district court found the justifications to be pretext with respect to Jurors Greene, Tate, and Jones without hearing argument from the defendants regarding why Moran’s race-neutral justifications were pretext. The question we face is whether this judicial determination of pretext in a Batson challenge without first demanding proof of pretext from the proponent of the challenge greater than that implicit in the evidence of the prima facie case requires reversal.
Given the extraordinary nature of this case, we cannot say that the district court’s findings were clearly erroneous. Race became a factor in this case at its very inception. The plaintiffs due process claim itself arises from his belief that race influenced the city’s decision-making process in the aftermath of a police incident affecting a racial minority. The racial undertones and tensions permeating this case would not have escaped the notice of the district court.[4] The preferred procedure for the district court would have been to take the third Batson step and provide the defendants the opportunity to show pretext. But in this exceptional case, we cannot say that a new trial is warranted, where the district court decided the Bat-son query based upon its credibility assessment of the proffered reasons, and, where no argument is made that the subsequent trial lacked fairness because of juror bias. We give the same deference to the district court’s decision whether it is to reject or approve a Batson challenge.
We emphasize the rare nature of this case and the importance of making detailed findings on the record in support of a ruling on a peremptory challenge under Batson. U.S. Xpress Enterprises, Inc., v. J.B. Hunt Transp., Inc., 320 F.3d 809, 814 (8th Cir.2003) (“We strongly urge, however, as we have in the past, that trial judges make on-the-record rulings articulating the reasoning underlying a determination on a Batson objection.”). The First Circuit has articulated the importance of the general procedure as follows:
Indicating these findings on the record has several salutary effects. First, it fosters confidence in the administration of justice without racial animus. Second, .it eases appellate review of a trial court’s Batson ruling. Most importantly, it ensures that the trial court has indeed made the crucial credibility determination that is afforded such great respect on appeal.
United States v. Perez, 35 F.3d 632, 636 (1st Cir.1994).
In conclusion, we affirm the district court’s denial of Moran’s motion for a new trial. The district court did not abuse its discretion by denying Moran’s challenges for cause, and it did not commit clear error by denying three of Moran’s peremptory challenges given the peculiar racial backdrop of this case.

. The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa, sitting by designation. See Moran v. Clarke, 309 F.3d 516, 518 (8th Cir.2002) (per curiam) (holding that a district judge outside of the Eastern District of Missouri would preside over this case and appointing Judge Pratt by random drawing).

. At the end of voir dire, and on his own initiative, Tate expressed his belief that the attorneys had not been clear about what the case was about. Moran claims that this statement was hostile and that Tate was also slightly antagonistic during voir dire. Defendants dispute both claims.

. As a related matter, the district court's failure to strike Norman-Cook for cause is moot. Norman-Cook was subsequently dismissed by the court after Moran's successful peremptory challenge. Therefore, the denial of the motion to strike her for cause is moot, especially since Moran had unused peremptory challenges remaining at the end of voir dire, i.e., it could not be said that he suffered any prejudice by having to use a peremptory challenge to strike Norman-Cook. See United States v. Ortiz, 315 F.3d 873, 892 (8th Cir. 2002) (holding there was no abuse of discretion by district court’s refusal to strike a juror for cause because the juror ultimately did not serve on the jury and “the necessity of using a peremptory challenge does not establish actual prejudice”); cf. Fetterly v. Paskett, 163 F.3d 1144, 1148 (9th Cir.1998) (holding that defendant did not suffer actual prejudice due to pretrial publicity in part because defendant did not use all of his peremptory challenges).

. Indeed, the district court began its discussion by acknowledging that race "played an enormous role in this case.” Moran, 323 F.Supp.2d at 980. The court then quoted Judge Shaw’s statement that "[t]his case starts with race, becomes embroiled with race and climaxes with race.” Id. (quoting Moran v. Clarke, 213 F.Supp.2d 1067, 1074-76 (E.D.Mo.2002) (Judge Shaw’s opinion of voluntary recusal)).